R. E. Henry v. Commissioner.
Henry v. Commissioner
Docket No. 16885.
United States Tax Court
1948 Tax Ct. Memo LEXIS 13; 7 T.C.M. (CCH) 958; T.C.M. (RIA) 48264; December 22, 1948
*13 Alfred Cerceo, Esq., 110 E. St., N.W., Washington, D.C., for the petitioner. John E. Mahoney, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner seeks a redetermination of a deficiency of $96.60 in his income tax for 1945. The only question is whether petitioner is entitled to a deduction for meals purchased while he was engaged in his employment as a railroad conductor, and the amount thereof. Findings of Fact Petitioner lived at 111 Parkway, Point Pleasant, New Jersey, where he maintained a home for his family. He filed his United States income tax return for 1945 with the collector of internal revenue for the first district of New Jersey at Camden. Since 1942 petitioner has been employed by the Pennsylvania Railroad. He was a trainman until 1945 when he was promoted to the position of conductor. He was an "extra," and was on call at all times. Petitioner's home junction was Bay Head, New Jersey; he usually worked out of New York City. He was hired from Jersey City and he also worked out of Philadelphia, Trenton or Phillipsburg. Bay Head is 66.6 miles from New York City. Regularly, upon *14 returning from each trip, petitioner made a record on a calendar of the number of hours he was away from home, including the hours when he was working and those expended in going back and forth. In the following tabulation there appears the date and hours of petitioner's employment (including "deadheading," i.e., traveling but not performing usual employe duties), and the amounts claimed to have been expended for meals: 1945
Month
Train No
Hours
Meals
JANUARY
14
752
139-110
25
$12.00
18
139-110
21
6.50
20
139-110
711
22
6.50
22
139-110
21
6.50
26 (NYExt.)
726-701
15
5.00
27 (NYExt.)
726-701
15
5.00
$41.50
FEBRUARY
17
746-723
724
14
3.50
3.50
$45.00
MARCH
7
702
744-725
13
2.50
21
22
Qualifying LB RR 3 days at $6.00 a day
18.00
23
27
28
Qualifying Philadelphia
29
4 days at $7.50 a day
30.00
$50.50
MAY
25
DHEquip
712-729
19
4.00
4.00
JUNE
27
726-719
PXLO
21
4.00
28
29
Special Duty for Pass. Trainmaster
30
NY Division 3 days at $4.00 a day
12.00
16.00
JULY
1 through 31
Special Duty for Pass.
Trainmaster NY Division
31 days at
$4.00 a day
124.00
AUGUST
1 through 31
Special Duty for Pass.
Trainmaster NY Division
31 days at
$4.00 a day
124.00
318.50
Total page 2
45.00
$363.50
SEPTEMBER
1 through 3
Special Duty for Pass.
Trainmaster NY Division
3 days at
$4.00 a day
12.00
10
710
722-743
17
4.00
11
706-709
722-743
18
4.00
19 (BHExt)
708-709
744-725
12
3.00
20 (BHExt)
702-709
744-725
726-743
19
5.00
21
708-709
22
746-725
726-743
13
3.00
31.00
OCTOBER
25
744-725
728-701
14
3.00
NOVEMBER
3
746-725
DHEquip 743
13
2.00
17
742-711
726-701
20
5.00
7.00
DECEMBER
22
708-717
722-743
18
5.00
46.00
Total page 3
363.50
$409.50
*15 During 1945 petitioner also had daily employment on 87 days which did not involve being away from home overnight. On the trip on January 14, 1945, petitioner left Bay Head Junction on Train 752 and worked as baggage master to Pennsylvania Station. The running time was about an hour and fifty minutes. He was paid for a day's time. The 752 arrived in New York at 2:15 in the afternoon, and petitioner was released from duty at 2:20, at which time he had something to eat. Calls for such trips as this were last-minute calls, and he did not eat at home. Train 139, also listed for January 14th, was the Southerner leaving New York at 6:55 P.M. and due in Washington at 11 P.M. Train 110 was the Havana Special due in Washington around 2 A.M., and in New York at about 7 A.M. Between the arrival of the Southerner in Washington and the departure of the Havana Special, petitioner ate in Washington. After he had eaten, he went to bed from about 11 P.M. until he was called for the 2 A.M. train, at which time he would eat again. When he returned to New York at about 7:30 the next morning, he would eat again. When he was in Washington, he slept at the Railroad Y.M.C.A., for which the Railroad paid. *16 After eating in New York at 7:30 in the morning, petitioner waited for the train to take him back to Bay Head. On the trip from New York to Bay Head, he would not be in active service unless he worked going back. On January 14, he did not work going back to Bay Head. On January 18, 1945, petitioner worked on Trains No. 139 and 110 on approximately the same schedule, except that he did not work from Bay Head to New York. On January 20, 1945, there was the same schedule, petitioner working from New York to Bay Head. On January 22, there was the same schedule, petitionr working only from New York to Washington. On both January 26 and January 27, petitioner worked from New York to Bay Head on Train 726, and from Bay Head to New York on Train 701. At that time he had to move up to New York. He stayed there because he was on the extra list and had to be there to be on call. In order to work this assignment, he was required to leave New York at 4:30 in the afternoon, arrive in Bay Head, and then work Train 726 to New York, leaving at about 7:27 P.M. The returning train (701) leaves New York at 12:15 A.M., arriving at Bay Head at 2:30. He would then return to New York on the 5:45 *17 in the morning, and arrive in New York at about 8 o'clock. To do this, he was required to deadhead down to cover the assignment out of New York. He would also deadhead back. He was paid for 15 hours, including the periods he deadheaded. Petitioner worked other trains on the Bay Head-New York run on February 17 and March 7. After finishing his "day's" work on those days, he returned home to sleep. On March 21, 22, and 23, petitioner was qualifying as a conductor. In order to qualify as a conductor, petitioner and other candidates were required to walk the railroad and become acquainted with every switch and siding. In this period he walked the railroad for two days on the Long Branch Division from Perth Amboy and took an examination relating to it the third day. He was paid for the time he was qualifying. Petitioner similarly qualified on March 27, 28, 29, and 30, 1945, for the Philadelphia Terminal Division. He walked for three days and took the examination the following day. For qualifying, petitioner was paid a "local day" each day. A "local day" is work from one to ten hours. On qualifying work they were on ten-hour duty. On May 25, 1945, petitioner worked as a brakeman *18 out of Bay Head, and brought the equipment back as a conductor. May 25, 1945, was a Friday and the train was an extra train to take people down to the shore. The train came back empty. On this trip he could not go home. He was told he had to take the train to New York. He had to get on it, get ready, test it, and leave. Petitioner returned home to sleep after his "day's" employment on May 25. On June 27 petitioner worked a "milk train." He returned home to sleep after that "day's" work. Petitioner worked two On June 28, 29, 30, petitioner had special duty on the New York Division. He was taken out of train service and employed to represent the train master of that division. He work at Bay Head Junction quite a bit, and was responsible for the assignment of the men. Upon weekends he had to be there all night. He worked all day Saturday until the last train was done. He slept when he got a chance, and worked about 17 hours a day when he was on this special duty. During the week he rode trains and reported on how they were loaded. If he reported the load was heavy, they would put on an extra train, or if light, they would take off a train. From July 1 through September 1, 1945, petitioner *19 also served on special duty with the train master for the New York Division. He would work approximately 15 hours a day and, except for weekends and the Fourth of July, he would return home at night. During the period while on this special duty, petitioner was away from home twelve times over weekends and holidays. For the remaining employment during the period September 10 through December 22, 1945, set forth in the above schedule, petitioner returned to his home and went to bed after finishing the "day's" job. On September 10, 11, 19, 21, and 22, October 25, November 3 and 17, and December 22, petitioner worked two jobs. On trips to Washington petitioner was paid a total of about $40. Sometimes petitioner was paid for "deadheading." In his return for 1945 petitioner deducted from $3,549.21 reported as income, $420 as expenses for "meals." No deduction was taken for lodging. When he did sleep while on trips, the railroad paid for it. The railroad did not reimburse petitioner for any meals. During the times when petitioner was away from home on business, on twenty occasions, as above indicated, he expended $137.50 for meals. Opinion In I.T. 3395 (1940-2 C.B., 64) *20 respondent specifically considered the matter of deductions for traveling expenses of railroad train employes. Respondent held that where such employes are on runs extending over distances of several hundred miles and are released from service at away-from-home terminals for sufficient time to secure necessary rest, and thus are required to pay from their personal funds for room rental and meals from the time they leave home until they return, they are entitled to deduct the expenses so incurred. In the case at bar, when petitioner slept away from home or was away from home "overnight," he did not have any expense for lodging because the railroad paid whatever costs were involved. But that is no ground for disallowing other amounts actually expended. Petitioner in his brief claims $409.50, being the aggregate of the expenses itemized in our findings. He has eliminated any claim for the meals relating to other work for which a deduction was originally taken - apparently on the ground that the runs in question would not qualify as away-from-home, and the expenses were in the nature of personal expenses attending daily work not involving a travel status. Cf. Louis Drill, 8 T.C. 902. *21 By this same principle no allowance can be made for meals on days when petitioner merely worked overtime. Our findings relating to the contested items disclose which of them is in connection with stays-away-from-home. As to these, petitioner was in a travel status and is entitled to some deduction for expenses for his meals. While the amounts claimed are high, they are supported by sworn testimony which in this case, "we see no reason for not accepting." Arthur M. Blum, 11 T.C. 101, 110, where it is stated: "* * * We see no reason for not accepting the testimony of petitioner as establishing a prima facie case of deductible expenditures." To the extent noted in our findings a deduction will be allowed petitioner. Decision will be entered under Rule 50.